CLERK'S OFFICE
A TRUE COPY
Oct 31, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Tracking of
*(Identify the person, property, or object to be tracked)*

a white Tesla, bearing Wisconsin license plate, AEB-6163 (Tesla)

Case No. 25-M-1303 (SCD)

## TRACKING WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and ☑ is located in this district; ☐ is not now located in this district, but will be at execution; ☐ the activity in this district relates to domestic or international terrorism; ☐ other: ______.

I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that *(check the appropriate box)* ☐ using the object ☑ installing and using a tracking device to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

☑ I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device: a white Tesla, bearing Wisconsin license plate, AEB-6163 (Tesla), the driveway of 11512 W. Woodside Drive, Hales Corners, Wisconsin and/or parking lot of 2925 West Lincoln Avenue, Milwaukee, Wisconsin.

**YOU ARE COMMANDED** to execute this warrant and begin use of the object or complete any installation authorized by the warrant by 11-10-25 *(no later than 10 days from the date this warrant was issued)* and may continue to use the device until 12-15-25 *(no later than 45 days from the date this warrant was issued)*. The tracking may occur within this district or another district. To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*

☐ into the vehicle described above ☑ onto the private property described above

☐ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both return it to *(United States Magistrate Judge)* Hon. Stephen C. Dries and — unless delayed notice is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

☑ Pursuant to 18 U.S.C. § 3103a(b)(1), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and this warrant prohibits the seizure of any tangible property or any wire or electronic communications (as defined in 18 U.S.C § 2510). I therefore authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)*

☐ for ______ days *(not to exceed 30)* ☑ until, the facts justifying, the later specific date of 04/29/2026.

Date and time issued: 10-31-25 9:15 am

Stephen C. Dries
*Judge's signature*

City and state: Milwaukee, Wisconsin

Hon. Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

**Return**

| Case No.: 25-M-1303(SCD) | Date and time warrant executed: 10/31/2025 | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of : SA Luke Hepp

Inventory of the property taken and name(s) of any person(s) seized:

Search Warrant not executed due to security protocols active on Tesla.

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 08/19/2026

Curt R Hansen
*Executing officer's signature*

Curt Hansen / Special Agent
*Printed name and title*

CLERK'S OFFICE
A TRUE COPY
Oct 31, 2025
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Tracking of
*(Identify the person to be tracked or describe the object or property to be used for tracking)*
a white Tesla, bearing Wisconsin license plate, AEB-6163 (Tesla)

Case No. 25-M-1303 (SCD)

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of 21 U.S.C. § 841, 843, 846, & 856. Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

- ☑ The person, property, or object is located in this district.
- ❒ The activity in this district relates to domestic or international terrorism.
- ❒ The person, property, or object is not now located in this district, but will be at the time of execution.
- ❒ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ❒ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
a white Tesla, bearing Wisconsin license plate, AEB-6163 (Tesla), the driveway of 11512 W. Woodside Drive, Hales Corners, Wisconsin and/or parking lot of 2925 West Lincoln Avenue, Milwaukee, Wisconsin.

☑ Delayed notice of ____ days (give exact ending date if more than 30 days: 04/29/2026 ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Curt R Hansen
*Applicant's signature*

Curt Hansen, HSI SA
*Applicant's printed name and title*

Sworn to before me Telephonically

Date: 10-31-25

Stephen C. Dries
*Judge's signature*

City and state: Milwaukee, Wisconsin

Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**
**MATTER NUMBER 2024R438**

I, United States Department of Homeland Security Investigations (HSI) Special Agent Curt Hansen, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to install and monitor an electronic tracking device to determine the location of vehicles, more particularly described **a white Tesla, bearing Wisconsin license plate, AEB-6163 (Tesla)**.

2. I am a Special Agent of HSI, assigned to the Resident Agent in Charge (RAC) Milwaukee, Wisconsin. I have been employed with HSI as a Special Agent for approximately four years. Prior to employment with HSI, I worked as a Deputy United States Marshal, Federal Air Marshal, and United States Border Patrol Agent. I have been a sworn federal law enforcement officer specifically investigating crimes involving narcotics, firearms, smuggling, terrorism, and immigration since September 2011. Throughout my law enforcement career, I have received training in general law enforcement and in specialized areas including narcotics and human smuggling. I am an investigator or law enforcement officer of the United States within the meaning of Title 8, United States Code, Section 1357(a)(5), that is, an officer of the United States who is empowered to conduct investigations of, and to make arrests for, certain offenses enumerated in Titles 8, 18, 19, 21, and 31 of the United States Code, and other related offenses. Since becoming employed as a federal agent, I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Brunswick,

Georgia. As part of my duties and responsibilities as an HSI Special Agent, I am authorized to investigate crimes that involve narcotics violations pursuant to Title 21, United States Code.

3. As part of my duties as an HSI Special Agent, I have experience conducting criminal investigations involving narcotics, firearms, gangs, and human trafficking and have participated in the execution of search warrants in such investigations.

4. I have received training related to the investigations and enforcement of federal sex trafficking laws. As a result of this training and my experience, I am familiar with the technologies traffickers use to recruit, communicate with, and exploit their victims. These include posting online advertisements for commercial sex dates, communicating electronically with prospective commercial sex buyers, and distributing sexually explicit images and videos of trafficking victims. I have also received more general training and gained experience in interviewing techniques, search warrant applications, the execution of searches and seizures, and the seizure, processing, and identification of electronic devices.

5. I am familiar with various methods of smuggling and trafficking narcotics and other controlled substances and the proceeds from sale of such substances. I am also familiar with methods used to evade detection of both the controlled substances and the proceeds from their sale that are used by drug traffickers. Through my training and experience, I am familiar with the way in which narcotic traffickers conduct their business, including, but not limited to: the types and amounts of drugs distributed; the types and amounts of profits made; the methods of importing and distributing controlled substances; the use of mobile telephones, email accounts, and the Internet to facilitate their transactions; and the use of numerical codes

and code words to conduct their dealings.

6. I have participated in investigations that have led to the issuance of search warrants involving violations of narcotic laws. These warrants involved the search of locations including: residences of targets, their associates and relatives; “stash houses” (i.e., houses used as drug/money storage locations); storage facilities; cellular/camera phones; and computers. Evidence searched for and recovered in these locations has included controlled substances, records pertaining to the expenditures and profits realized from the distribution and sale of controlled substances, and monetary instruments and various assets that were purchased with the proceeds of the drug trafficking. I have participated in the execution of multiple federal search warrants.

7. Additionally, I have received training related to the investigations and enforcement of drug trafficking laws.

8. As a result of this training and my experience, I am familiar with the technologies of drug traffickers and those engaged in human trafficking. I know that drug traffickers and/or human traffickers often use electronic equipment and wireless and landline telephones to conduct drug trafficking and/or human trafficking operations. I know drug trafficking and/or human trafficking often use electronic devices, such as cellular devices, to generate, transfer, count, record, or store the information described above and conduct drug trafficking and engaged in human trafficking. I am familiar with computers, cellular devices, and other electronic media or electronic storage devices and their uses by drug traffickers to communicate with suppliers, customers, co-conspirators, and fellow traffickers and/or human trafficking victims, customers, co-conspirators, and fellow human traffickers. I know that drug

traffickers and/or human traffickers often keep documents and records about the transportation, drug sourcing, drug ordering, drug sale, drug distribution, victim information, victim posting, posting of advertising, communication with sex trafficking customers, human trafficking proceeds, etc. These documents and records and additionally receipts, notes, ledgers, and other documents regarding drug traffickers and/or human traffickers are often maintained where the traffickers have ready access. These may be stored computers, cellular devices, and other electronic media or electronic storage devices. These devices often contain evidence of illegal activities in the form of communication records, voicemail, email, text messages, video and audio clips, location information, business records, and transaction records. I know drug traffickers and/or human traffickers take, store, preserve, or maintain photographs or videos of themselves, their associates, their property, their drugs, their drug proceeds, their trafficking victims, and/or customers. These traffickers usually maintain these photographs or videos on computers, cellular devices, and other electronic media or electronic storage devices. Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime; and (2) the objects may have been used to collect and store information about crimes. I know the following information can be retrieved to show evidence of use of a computer or smartphone to further the drug trade: system components, input devices, output devices, data storage devices, data transmission devices, and network devices and any data contained within such systems; computer media and any data contained within such media; operating system software, application or access program disks, manuals, books, brochures, or notes, computer

access codes, user names, log files, configuration files, passwords, screen names, email addresses, IP addresses, and SIM cards.

9. I am familiar with the language used over the telephone and other electronic communications to discuss sex and drug trafficking and know that the language is often limited, guarded, and coded. I am familiar with various code names used to describe controlled substances, as well as various code words used to describe commercial sex acts. I also know that drug traffickers and sex traffickers often use electronic devices (such as computers and cellular phones), electronic communication services (such as e-mail and messaging services), and social media to facilitate these crimes.

10. Further, based on training and experience, I am aware that it is a common practice within a drug trafficking organization to have various tasks assigned to persons involved in the organization. The members of the organization may have certain tasks, dependent on their hierarchy within the organization. It is common for those in charge of the organization to use those below them to make deliveries, transport, and hold/take possession of items, such as controlled substances and/or narcotics for distribution or firearms for protection/intimidation. The persons higher in the drug trafficking organization often avoid conducting the hand-to-hand transaction in order to insulate themselves, to avoid apprehension/detection from law enforcement. Further, a human trafficker uses a "bottom", which I know is a slang term to refer to a female appointed by the trafficker to supervise the other human trafficking victims, and who is used by the trafficker to report "rule" violations. The bottom tend to operate as a trafficker "right hand," and my help instruct victims, collect money, book hotel rooms, post ads, or inflict punishments on other girls at the direction of the

trafficking. Traffickers use “bottoms” in order to insulate themselves, to avoid apprehension/detection from law enforcement

11. Further, I am aware through training and experience, as well as numerous conversations with both users of controlled substance and dealers of controlled substances, that often times “drug houses”, also called “trap houses”, are established as places where drug users take up residence at one place. It is common that these “drug houses” or “trap houses” are engaged in prostitution where drugs are both used and sold. It is a common practice for drug users to trade sexual favors for drugs and / or trade sexual favors for money to buy drugs at these places. It also becomes a common practice for persons to bring stolen items to these places in the hopes to trade them for drugs or money that can be used to purchase drugs. These residences help drug dealers impede law enforcement from making observations of what is taking place inside the residence, and obfuscate criminal investigations by storing illegal drugs inside a place with multiple users of the illegal drugs, as it creates confusion as to who is the owner of the drugs inside the residence might be. These types of “drug houses” are at times run by persons that are trusted to hold drugs and money and are usually armed or given armed protection to perform this task.

12. I have conducted investigations ranging from death, drug, property, and human trafficking crimes by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims. I know that when conducting an investigation into many drug investigations, and human trafficking investigations that the cellular phone data will be a key piece of evidence based on my training and experience. Individuals who sell and use narcotics and who engage in the

trafficking of others will mainly utilize their cell phone to set up a transaction utilizing their cellular phone or a special application downloaded on their phone. I know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos. The same is true for those that engage in drug trafficking and human trafficking.

13. I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, including surveillance recording devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

14. Information contained in this affidavit was either obtained directly by me or by other investigators who I believe to be truthful and credible. The facts in this affidavit come from personal observations, training and experience, and information obtained from other investigators and witnesses.

15. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of distribution and possession with intent to distribute controlled substances; conspiracy to distribute and possess with the intent to distribute controlled substances; use of a communication facility in furtherance of a drug trafficking offense; and maintain drug involved premises, violations of Title 21, United States Code, Sections 841, 843(b), 846, and 856, have been committed by Russell V. MCDADE, a.k.a. "Ro", (DOB XX/XX/1980), Samuel P. STAIR, a.k.a. "Sam STAIR", (DOB XX/XX/1974), Walter RINGERSMA (DOB XX/XX/1965), Stacey L. BERRY (DOB XX/XX/1988), Alberto L. BOFFIL Jr., a.k.a. "Nephew" (DOB XX/XX/07/07/2004) and other identified and unidentified subjects.

16. There is also probable cause to believe that the location of the **Tesla** will constitute evidence of those criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## II. PROBABLE CAUSE

### A. Background

17. Since approximately May 2024, HSI, Drug Enforcement Agency (DEA), Wisconsin Department of Justice – Department of Criminal Investigation (DCI), the West Allis Police Department (WAPD) and other local agencies have been investigating a drug trafficking organization (DTO) on the southside of Milwaukee, Wisconsin that distributes fentanyl and cocaine. The DTO has been connected to several overdose deaths and appears to be led by

Russell V. MCDADE (XX/XX/1980). Case agents have identified that Samuel STAIR allows drug trafficker MCDADE to operator "trap houses" out of STAIR's properties for a profit. As part of the investigation, case agents have also identified MCDADE to knowingly recruit, entice, harbor, transport, provide, obtain, and maintain women addicted to controlled substance, through force, threats of force, fraud, and/or coercion, to engage in commercial sex acts. BERRY was further identified through jail calls, witness, and surveillance as MCDADE's bottom.

18. As part of the investigation, case agents have reviewed numerous recorded jail calls with in custody inmates and MCDADE, STAIR, and BERRY[1]. Case agents have identified by MCDADE, STAIR, and BERRY by their voices, names and other facts shared in the recordings consistent with MCDADE, BERRY and/or STAIR.

19. Case agents have identified numerous cellphone number used by MCDADE through the investigation. Case agents are aware, it if common for those engaged in drug trafficking to have multiple cellphones and to change cellphones often in order to evade law enforcement. Case agents have identified telephone numbers 414-514-3794 with IMSI number: 310410405991915; 414-439-7468 with IMSI number: 310410406002606; **414-460-9608** with IMEI: 356830361124670 and 414-243-1392 with IMEI: 352700320439870 with listed subscriber unknown, whose service provider is Dish, as numbers MCDADE has used to engaged in his criminal conduct. Case agents have recently identified MCDADE's telephone number **414-460-9608 (Target Telephone 1)** has been ported over to service provider XXXX since MCDADE was arrested. most recently numbers. Based on the investigation into MCDADE and his other DTO members, case agents believe MCDADE and others are still using MCDADE's

[1] Since the investigation has begun, MCDADE and BERRY have also been in custody at times.

telephone number **414-460-9608 (Target Telephone 1)** to engaged in drug trafficking and other criminal conduct. Case agents have also identified **414-732-3682** (the **"Target Cell Phone 3"**), with listed subscriber Samual P. STAIR, and listed address of 11512 W. Woodside Dr, Hales Corners, WI, whose service provider is T-Mobile, as STAIR's telephone number.

20. As part of the investigation into MCDADE, case agents are aware, that MCDADE will often use/direct others to operator his drug trafficking and other criminal conduct in an attempt to separate himself from his crimes to evade law enforcement detection. MCDADE has a history of drug trafficking offenses and has also cooperated historically with law enforcement. MCDADE has used his past knowledge of cooperation to assist him in evading law enforcement, because he is aware of some of law enforcement's investigative techniques. This is further observed during the May 2025 controlled buy outlined below. Further, MCDADE has a history of attempting, multiple times, to voluntarily assist law enforcement; however, the attempts continue to appear to be MCDADE fishing for information regarding possible investigations into his own conduct, his associates' conduct and/or attempting to remove his competitors from the community.

21. MCDADE has the following criminal convictions:

a. Milwaukee County Case 1999CF3561, Battery, Use of a Dangerous Weapon and Misdemeanor Bail Jumping;
b. Milwaukee County Case 2001CF1176, False Imprisonment, Use of a Dangerous Weapon, Party to a Crime;
c. Milwaukee County Cas Number 2002CF4576, Possess with intent to Delivery Cocaine;
d. Milwaukee County Cas Number 2007CF5564, Possess with intent to Delivery Cocaine;
e. Milwaukee County Cas Number 2014CF837, Disorderly Conduct; and
f. Milwaukee County Cas Number 2017CF500, Manufacture/Deliver Heroin.

22. In March 2025, case agents were notified of a confidential source (CS-1) that was purchasing controlled substances from "Roro" using telephone number 414-595-2360, a previously used drug line of MCDADE. CS-1 made recorded calls to telephone number 414-595-2360 with the assistance of law enforcement to arrange the purchase of fentanyl from 1512 South 21st Street, Milwaukee, Wisconsin. Case agents reviewed these recorded calls and were able to recognize that the voice of "Roro" as MCDADE.

23. CS-1 has given information concerning individuals involved in illegal activities, which has been independently verified through this investigation. The information has been verified through controlled buys, video recordings obtained during the controlled buys, queries through law enforcement databases, and surveillance. CS-1 is cooperating with law enforcement for consideration on pending criminal drug charges in Forest County. CS-1 has had past arrests or convictions for felony drug offenses, felony family support offenses, felony and misdemeanor bodily harm offenses, resisting/obstruction, traffic offenses and noncriminal retail theft offenses. Further, during CS-1's cooperation, on May 30, 2025, CS-1 was re-arrested on drug offenses by State Patrol in Outagamie County. This drug conducted was not at the direction of law enforcement and contrary to CS-1 cooperation agreement.

**B. Controlled Buys**

24. Based on training and experience, I know that a "controlled buy" is a law enforcement operation in which an informant, such as the CS-1, purchases drugs from a target at the direction of law enforcement. For the below outlined controlled buys, the operations were generally conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When a CS was used, she/he was searched for contraband, weapons,

and money before the operation. The CS was also wired with a concealed body recorder and/or a monitoring device. When the transaction was completed, the CS met cases agents at a pre-determined meet location and gave the purchased drugs and the recording/monitoring equipment to the case agents. The CS was again searched for contraband, weapons, and money and then interviewed by the case agents about the drug transaction. The information provided by a CS was confirmed on the recording/monitoring equipment. A sample of the suspected drugs was then field tested by the case agents for the presumptive presence of controlled substances and then placed in inventory pursuant to normal inventory procedures. Further, often the calls to the target by the CS, which were consensually recorded calls, were done under the direction and control of case agents and/or made in the presence of case agents.

**a. Controlled Buy March 27, 2025 at STAIR's Property / MCDADE's Trap House**

25. On March 27, 2025, CS-1 called "Ro" at the telephone number 414-595-2360 to arrange the controlled buy of fentanyl at 1512 South 21st Street, Milwaukee, Wisconsin. Case agents conducted surveillance and observed CS-1 arrive and enter the 1512 South 21st Street, Milwaukee, Wisconsin.

26. Case agents reviewed City of Milwaukee Assessor website and determined 1512 South 21st Street, Milwaukee, Wisconsin was purchased by S2 Real Estate Group 3 LLC, with a listed address of 2925 West Lincoln Avenue, Milwaukee, Wisconsin on August 9, 2019. Case agents reviewed the State of Wisconsin Department of Financial Institutions Corporate Records[2]

[2] https://apps.dfi.wi.gov/apps/corpsearch/Advanced.aspx

and observed that S2 Real Estate Group 3 LLC registered agent was "Sam Stair" and a listed address of 11512 W. Woodside Drive, Hales Corners, Wisconsin (Figure 1).

| | | | |
|---|---|---|---|
| S089296 | S2 REAL ESTATE GROUP 3 LLC<br>found: SAM STAIR<br>12 - Domestic Limited Liability Company | 09/21/2010 | Restored to Good Standing<br>07/23/2025 |

(Figure 1)

27. Case agents are aware that STAIR resides at 11512 W. Woodside Drive, Hales Corners, Wisconsin. Further, as part of the investigation, case agents are aware that STAIR's is the owner of S2 Real Estate which is located at 2925 West Lincoln Avenue, Milwaukee, Wisconsin (Figure 2).



(Figure 2)

28. Once inside 1512 South 21st Street, Milwaukee, Wisconsin, CS-1 observed "Ro". CS-1 later explained that he/she provided "Ro" (MCDADE) with the buy money and MCDADE provided CS-1 with the suspected fentanyl. CS-1 stated that "Ro" then exited the residence.

29. Case agents observed MCDADE and Walter RINGERSMA, previously identified as part of the investigation in the DTO, exit 1512 South 21st Street, Milwaukee, Wisconsin. CS-1 also left the residence and met with case agents.

30. Case agents reviewed the audio/video recorder footage obtained by CS-1 and recorded surveillance during the controlled purchase. Case agents identified MCDADE's voice as the person CS-1 identified as "Ro" and MCDADE's voice was on the recording during the drug transaction with CS-1.[3]

31. The suspected fentanyl was brought back to the station where it was weighed, and field tested positive for fentanyl. The total weight was 4.03 grams.

32. CS-1 identified MCDADE as "Ro" using a booking photo.

**b. Controlled Buy May 20, 2025 STAIR's Property / MCDADE's Trap House**

33. Following the controlled buy in March 2025, CI-1 indicated "Ro" (MCDADE) texted messaged CI-1 and stated there was a new drug line, 414-541-3794. CI-1 indicated it was not uncommon for "Ro" to change drug lines.

34. On May 20, 2025, case agents met with CS-1 and made recorded calls to the number 414-514-3794 for "Ro" to arrange the purchase of fentanyl from 1425 West

[3] During the controlled buy the recording device was in CS-1 pocket, so the video did not actual capture the buy. However, the audio did capture the buy, which was consistent with the description provided by CS-1.

Greenfield Avenue, Milwaukee, Wisconsin. Case agents reviewed these calls and was able to recognize that the voice of "Ro" is in fact MCDADE.

35. Case agents reviewed City of Milwaukee Assessor website and determined 1425 West Greenfield Avenue, Milwaukee, Wisconsin was purchased by S2 Real Estate Group 9 LLC, with a listed address of 11512 W. Woodside CT, Hales Corners, Wisconsin, STAIR's home address, on March 29, 2023. Case agents reviewed the State of Wisconsin Department of Financial Institutions Corporate Records and observed that S2 Real Estate Group 9 LLC registered agent was "Sam Stair" and a listed address of 11512 W. Woodside Drive, Hales Corners, Wisconsin (Figure 3).

| | | | |
|---|---|---|---|
| S120881 | S2 REAL ESTATE GROUP 9 LLC<br>found: SAM STAIR<br>12 - Domestic Limited Liability Company | 11/21/2018 | Organized<br>11/21/2018 |

(Figure 3)

36. On May 20, 2025, case agents met with CS-1 in order to conduct a purchase of fentanyl from MCDADE.

37. Case agents searched the CS-1 and no money or contraband was found. TCS-1 placed a recorded call to "Ro" at the phone number 414-514-3794, in the presence of case agents. During the phone call, the CS-1 spoke with a male subject CS-1 knows as "Ro". The CS-1 advised that they would meet with "Ro" at 1425 West Greenfield Avenue, Milwaukee, Wisconsin. CS-1 was provided with pre-recorded police buy money in the amount of $450 and a hidden video/audio recorders for the transaction. Case agents followed CS-1 near the meet location. CS-1 made no stops and did not interact with anyone after being searched and before arriving at the meet location.

38. Prior to the controlled purchase, case agents positioned themselves in the area 1425 West Greenfield Avenue, Milwaukee, Wisconsin to conduct surveillance. Case agents observed CS-1 enter the residence. Case agents recognized MCDADE's voice on the hidden recording during the time of the transaction. Hidden video during the transaction captured a black male matching the physicals of MCDADE wearing a grey sweatshirt and his hands packaging the suspected fentanyl for the sale (this is no video capturing his face and speaking to CS-1. The video then captured the CS-1 then exited the residence with the suspected fentanyl, which was observed by case agents also. Case agents then observed CS-1 walk to his/her vehicle. CS-1 was then followed to a meet location. CS-1 did not make any contact with anyone after leaving 1425 West Greenfield Avenue and prior to meeting with case agents.

39. CS-1 stated he/she provided "Ro" with the pre-recorded buy money from the police and "Ro" provided him/her with the suspected fentanyl in return. CS-1 stated that "Ro" was the same individual that CS-1 purchased drugs from in the past.

40. CS-1 stated that while inside the residence there were numerous people present. CS-1 stated there were three males with pistols and extended magazine. CS-1 identified one of the males with a pistol as "Nephew". CS-1 provided case agents with "Nephew's" contact information as 262-234-8917 (**Target Cell Phone 2)**. CS-1 identified "nephew" as Alberto L. BOFFIL Jr. (m/w, XX/XX/04) by DOT photo, a known associate to MCDADE from previous surveillance by case agents.

41. CS-1 identified "Ro" as MCDADE by a booking photo.

42. Case agents later reviewed the audio/video recorder footage obtained by CS-1

from the controlled purchase and identified "Ro" as the voice of MCDADE. Also, case agent heard on the hidden recording MCDADE make note of a Milwaukee Police Department (MPD) Squad car that passes through the alley running east and west behind 1425 West Greenfield Avenue. MCDADE calls for people inside the residence to conduct a perimeter of the area. MCDADE can also be heard, after providing the fentanyl to CS-1, asking CS-1 "Are you doing a controlled buy?"

43. The suspected fentanyl weighed 5.8 grams and tested positive for fentanyl.

**C. MCDADE and STAIR Connections**

44. Through this investigation it was learned that MCDADE was working with STAIR, under the guise of his company "S2 Real Estate" to engage in drug trafficking. This information was first heard by case agents on recorded jail calls when MCDADE made mention of himself working for a real estate company. MCDADE is also implicated in having a relationship with a female (identified as "Jeanette") at the S2 Real Estate company in recorded jail calls.

45. Case agents review a recorded jail call from September 13, 2025 from inmate PIN of Johnny A. Bynum which called telephone number 414-839-2402, which was a number associated with McDade at the time. (606959777_162541_09-13-2024_13-33-04_1-414-839-2402_1522.mp3). Case agents also identified MCDADE by his voice and other facts shared in the recording consistent with MCDADE. During this call MCDADE answered the phone. The inmate and MCDADE had a short conversation about the fact that MCDADE has not been answering the phone. MCDADE stated that he works at a real estate job and asked that the caller try to reach him after 5 PM when he is not working.

46. Case agents review a recorded jail call from September 16, 2025 from inmate PIN of Stacey BERRY which called telephone number 414-242-1766. BERRY speaks with a female. This conversation begins with the female telling BERRY that they are currently in “code black” and she is looking for “Pooh-Shiesty” masks for people to wear. They begin by speaking about working on a bar that was purchased by “Ro” and the long hours to fix it up. There is then a conversation about BERRY getting money placed on BERRY’s books, they state that “Ro” is there but not able to put the money on the books yet, “Wally” has the money card. They then discuss the night BERRY was arrested and that BERRY should not have been there and gotten arrested. Eventually the conversation turns to a house that was recently lost by a female and BERRY states, “So wait he’s not fucking the bitch from S2 no more” and the female responds to BERRY to “Shut up…Don’t say it on the phone no more”. The female then clarifies that the house they are speaking of is not “one of those”. The female also states that she told “Ro” that she thinks he is the fall guy for S2.

47. Case agents reviewed State of Wisconsin Department of Financial Institutions. Case agents observed that “Sam STAIR” is the listed Registered Agent of multiple the multiple variations of the listed “S2 REAL ESTATE LLC”.

48. Case agents search “S2 Real Estate” which produced a list of 43 different LLC’s that are associated with the name of “S2 Real Estate”, with different variations. Many of the name including addresses of residences and buildings throughout the City of Milwaukee and the City of West Allis. In each case the “registered agent” of the LLC is listed as “SAM STAIR” or “SAMUEL STAIR”. Further the office for the LLC is listed in all cases as: 11512 W WOODSIDE DR / HALES CORNERS, WI 53130. Case agents review law enforcement

databases and observed that Samuel P. STAIR (m/w, DOB XX/XX/1974) is associated with the address of 11512 W Woodside Dr, Hales Corners, WI 53130. Further, case agents review Wisconsin Department of Transportation (DOT) records, which indicated Samuel P. STAIR's address is 11512 W Woodside Dr, Hales Corners, WI 53130.

49. On September 12, 2024, MCDADE was at Milwaukee Police Department (MPD) District Two and spoke with officers. MCDADE stated he knew the officers through "Jeanette" a property manager of S2 Real Estate, located at 2925 West Lincoln Avenue. MPD officers understood that MCDADE worked for S2 Real Estates in a maintenance capacity. MCDADE stated he was frustrated that police were continuing to "board up" residence, including the property 1927 South 6th Street (rear cottage), Milwaukee, Wisconsin. MCDADE stated he was going to "takeover" the lease for his sister-in-law. Case agents were aware that on September 10, 2024, MPD executed a drug state search warrant at 1927 South 6th Street (rear cottage), Milwaukee, Wisconsin.

50. Case agents also received information that provided to West Allis Detective Nick Stachula regarding STAIR and MCDADE's criminal connections.

51. On September 14, 2024, at approximately 12:21 a.m. Detective Nick Stachula received a text message from telephone number 414-391-8404. The message began with a video of a male who Detective Stachula knew to be MCDADE based on prior investigations. Case agents also reviewed the video and verified it was MCDADE. MCDADE was seated in front of a coffee table. On top of the coffee table were four or five different piles of off-white rocky substances, which based on training and experience appeared to be crack cocaine. Additionally, the video had two clear plastic baggies of powdered substances, one brownish and the other

white, which based on my training and experience, would be consistent with brown heroin and white cocaine. The video also captured numerous stacks of US Currency as well as a digital scale. In the 12 second video, MCDADE is wearing a grey Adidas jogging suit with white stripes down the sides. MCDADE is holding a clear plastic baggie from which he produces suspected crack cocaine rock and places it onto the digital scale and states "10". A female voice is then heard saying: "it sucks man I got all this money in my tit". As the female states this she takes the scale out of view of the video and then as it comes back into the view of the video the crack cocaine on top of the scale is gone. The female's face is never visible in the video. The female's voice then states: "they are all waiting here". The video then depicts MCDADE is then visible back away from the table and shaking the rest of the suspected crack cocaine remaining in the clear plastic baggie to the bottom of the bag in his hands as the video ends.

52. This video is then followed by a text message from telephone number 414-391-8404 (the same number):

> *"Dude is a liar he work for the Realestate company S2 on the south side they rent him any drug house he want in different drug addict name he getting fental from his cousin in Chicago got runnners running back and forth up north to nenah foundulac and camel port West Allis he got them carrying guns to protect him house on 21 pierce another house on 6 a block after mitchell and he just got a new on 18 lincoln they let him know before the house get raid it and he move to another one"*

53. At the time of these messages being sent Detective Stachula did not have telephone number 414-391-8404 saved in his phone and did not know who it was that sent these unsolicited messages. At 8:39 a.m. Detective Stachula replied, "Who Sent this to me?" The

telephone number 414-391-8404 replied: "Tommie Cole". West Allis Police Department previously arrested Tommie Cole related to a drug offense (24-033949); however, Cole was not in custody at the time the messages were sent. Cole was also not cooperating with law enforcement for any consideration at the time the messages were sent.

**a. 712 South 21st Street Milwaukee, Wisconsin**

54. Case agents identified 712 South 21st Street, Milwaukee Wisconsin as an address associated with MCDADE. In August 2024, case agents were conducted surveillance of 712 South 21st Street, Milwaukee Wisconsin and above MCDADE make contact at the address.

55. Case agents conducted a search of the address of 712 South 21st Street, Milwaukee Wisconsin through Milwaukee City Assessor's website[4] and learned that the listed Property Owner is "S2 REAL ESTATE GROUP 6 LLC". Case agents reviewed the State of Wisconsin Department of Financial Institutions Corporate Records and observed that S2 Real Estate Group 6 LLC registered agent was "Sam Stair" and a listed address of 11512 W. Woodside Drive, Hales Corners, Wisconsin (Figure 4).

| | | | |
|---|---|---|---|
| S111057 | S2 REAL ESTATE GROUP 6, LLC<br>found: SAM STAIR<br>12 - Domestic Limited Liability Company | 09/06/2016 | Organized<br>09/06/2016 |

(Figure 4)

56. Case agents conducted surveillance during the month of September 2024 and observed boxes being moved out of 712 South 21st Street, Milwaukee Wisconsin. This was also consistent with record jail calls reviewed with MCDADE during the same time, in which MCDADE discussed a different location as a stash house.

[4] https://itmdapps.milwaukee.gov/MyMilwaukeeHome/indexSidebarNew.jsp

**b. 1512 South 21st Street, Milwaukee, Wisconsin (MCDADE Trap House)**

57. Case agents identified 1512 South 21st Street, Milwaukee, Wisconsin as an address associated with MCDADE during the investigation. As previously noted, this property is owned by S2 Real Estate and connected to STAIR. Case agents also identified other connections between MCDADE and STAIR at this property.

58. On November 27, 2024 at approximately 10:30 a.m. case agents conducting video surveillance captured a Subaru bearing Wisconsin license plate AZD-9422 (Subaru) parked on the parking lot / drive way direct north of 1512 South 21st Street, Milwaukee, Wisconsin. Case agents also observed a Lexus bearing Wisconsin license plate ASG-8148 (Lexus) parked across the street to 1512 South 21st Street, Milwaukee, Wisconsin. Based on other surveillance during the investigation into MCDADE, case agents are aware that MCDADE has used the Lexus during the investigation.

59. Case agents reviewed Wisconsin DOT records which indicated the Subaru had a registered owner of "S2 Technologies" with address of 11512 W Woodside Dr., Hales Corners, WI 53130 (STAIR's address). Case agent conducted surveillance at S2 Real Estate, located at 2925 West Lincoln Avenue, Milwaukee, Wisconsin on this same day, November 27, 2024. Case agents observed a red Chevrolet Pickup Truck bearing Wisconsin license plate NL2718 (Chevrolet) running in the lot attached to the building and the male driver entering and exiting the building of S2 Real Estate. Case agents reviewed Wisconsin DOT records for the Chevrolet and determined that it had a registered owner of "S2 Technologies" with address of 11512 W Woodside Dr., Hales Corners, WI 53130 (STAIR's address), the same as the Subaru, parked at MCDADE's trap house.

60. As previous described, On March 27, 2025, a controlled buy from MCDADE was conducted at 1512 South 21st Street, Milwaukee, Wisconsin.

61. On August 6, 2025, case agents conducted surveillance in the area of 1512 South 21st Street, Milwaukee, Wisconsin from approximately 11:50 a.m. to 1:20 p.m. Case agents observed numerous people coming and going from 1512 South 21st Street, Milwaukee, Wisconsin. Some of the males and females seen walking in and out of 1512 South 21st Street, Milwaukee, Wisconsin were identified as known drug users and/or known to engage in prostitution.

62. For example, case agents are aware that just prior to STAIR's arrival as outlined below, a female identified as Tozi Grace Topbear left the residence of 1512 South 21st Street, Milwaukee, Wisconsin and entered a Tan / Biege Chevy Trax, bearing Wisconsin license plate, 738-PRM (Trax). Milwaukee County Sheriff's Office Deputy Christopher Bacon conducted a traffic stop on this vehicle (MCSO Cad # 25-142210) on the Trax and identified the driver as a Larry Harris and the female as Topbear. Topbear stated that she was a prostitute and she was the picked up by Harris to engage in sexual activities, but she had not yet engaged in anything. Harris stated to that he was giving a friend (Topbear) a ride to his home in Oak Creek and he did not know his friend's (Topbear's) name.

63. During surveillance, case agents also observed MCDADE and RINGERSMA at 512 South 21st Street, Milwaukee, Wisconsin at approximately 11:50 a.m.

64. At approximately 12:40 p.m. MCDADE was observed again interacting with a person from inside 1512 South 21st Street, Milwaukee, Wisconsin. Case agents observed MCDADE and the person walk together to the area of South 21 Street and West Orchard Street

on the southeast corner. It appears that after they walk to the corner multiple people begin to walk the area in the manner consistent with checking the area for security concerns or law enforcement.[5] This perceived "check" of the area was observed immediately after the traffic stop on Harris's vehicle, which left the area of 1512 South 21st Street, Milwaukee, Wisconsin after picking up Topbear from inside 1512 South 21st Street, Milwaukee, Wisconsin.

65. Case agents then observed MCDADE enter 1512 South 21st Street, Milwaukee, Wisconsin. At approximately 12:55 p.m. case agents observed Sam STAIR exit **a white Tesla bearing Wisconsin license plate, AEB-6163 (Tesla)**. STAIR walked into the front entrance of 1512 South 21st Street, Milwaukee, Wisconsin. At approximately 1:04 p.m. STAIR is observed exiting the residence. STAIR is speaking on the phone and then re-enters 1512 South 21st Street, Milwaukee, Wisconsin shortly after. At approximately 1:11 p.m. STAIR exits1512 South 21st Street, Milwaukee, Wisconsin holding a black bag in his right hand (Figures 5 and 6). STAIR speaks with MCDADE. Moments later STAIR enters his **Tesla** and leaves the area to the north. At 2:05 p.m., STAIR is seen at the 1425 West Greenfield Avenue, Milwaukee, Wisconsin, further described below.





[5] This is consistent with the [illegible] occurred during t[illegible] on [illegible] May 20, 2025 at the address of 1425 West Greenfield Avenue, Milwaukee, Wisconsin. MCDADE called for a "perimeter check" of the immediate area due to a marked squad traveling through the area. This is described previously in the affidavit

(Figure 5) (Figure 6)

**c. 1425 West Greenfield Avenue, Milwaukee, Wisconsin**

66. Case agents identified 1425 West Greenfield Ave, Milwaukee, Wisconsin as an address associated with MCDADE during the investigation, specifically a trap house being used by MCDADE. As previously noted, this property is owned by S2 Real Estate and connected to STAIR.

67. As previous mentioned in this affidavit there was a controlled buy from the address of 1425 West Greenfield Ave, Milwaukee, Wisconsin.

68. On Wednesday August 6, 2025, at approximately 2:05 p.m., STAIR is seen at the 1425 West Greenfield Avenue, Milwaukee, Wisconsin. STAIR appeared to be speaking with a maintenance worker working on the front porch at the address. At approximately 2:22 p.m. STAIR's **Tesla** is then observed back at the S2 Real Estate Building, 2925 West Lincoln Avenue, Milwaukee, Wisconsin parked in the rear lot.

**D. DRUG CONNECTION STAIR and MCDADE**

69. On August 12, 2025, case agents met with CS-2 to speak about information concerning S2 Real Estate, STAIR and MCDADE.

70. CS-2 has given information concerning individuals involved in illegal activities, which has been independently verified through this investigation and other investigations. The information has been verified through queries through law enforcement databases, and surveillance. CS-2 has had past convictions for felony robbery, drug, and firearm offenses. CS-2 has no prior arrests or convictions related to dishonesty. CS-2 was cooperating with law

enforcement for third-party consideration on behalf of a family member in a pending federal tax investigation. As of, CS-2 is now cooperating with law enforcement in exchange for monetary consideration. As of today's date, CS-2 has not received any fund for his cooperation.

71. In July 2025, STAIR provided CS-2 a $10,000 loan. CS-2 has been making payments to STAIR for that loan. STAIR currently has the title of CS-2's property as collateral for the loan. CS -2 is not behind in any payments to STAIR.

72. CS-2 explained that MCDADE is a known employee of S2 Real Estate located at 2925 West Lincoln Avenue, Milwaukee, Wisconsin.

73. CS-2 knows that MCDADE and the owner of S2 Real Estate, "Sam" STAIR have known each other for approximately 4-5 years.

74. CS-2 was able to recall an interaction from approximately 4 years prior wherein CS-2 witnessed STAIR communicating with MCDADE concerning a drug transaction. CS-2 stated that STAIR shared with CS-2 that MCDADE asked STAIR for between $20,000 to $30,000 to purchase a kilogram of cocaine. CS-2 stated STAIR was known to use cocaine recreationally, but this was the first time the CS-2 knew of STAIR financing drug dealing.

75. CS-2 explained that MCDADE was known as a "security employee" for S2 Real Estate. CS-2 stated that what MCDADE really does is use S2 Real Estate buildings to run drug and prostitution operations.

76. CS-2 stated STAIR has requested that CS-2 make pick-ups of packages from these trap houses and deliver them to STAIR's home residence in Hales Corner, Wisconsin. CS-2 stated that in the past 30 days STAIR asked the CS-2 to pick up an item from MCDADE at 1512 South 21 Street, Milwaukee, Wisconsin, which was concealed in an insulated pizza

container. The CS-2 believed that the container was too heavy for pizza and was consistent with being money and/or drugs. The CS-2 was asked not to inspect such deliveries by STAIR and delivered this package to STAIR who was at his home in Hales Corner, Wisconsin.

77. In a follow up interview with CS-2, CS-2 stated that STAIR paid CS-2 $2,000 cash just prior to the delivery as a payment for the task. Based on my training and experience, this large amount of payment for a simple delivery of a package, would be consistent with the package containing items connected to illegal drug trafficking. For example, the risk of being caught with a large amount to illegal controlled substances or illegally obtained drug proceeds would likely make individuals unwilling to assist in delivering such packages. In order to make the risk worth it, drug traffickers will often provide compensation to drug carriers/drug proceed carriers and also ensure those individuals to not steal from the drug traffickers.

78. CS-2 stated STAIR discussed concerns regarding security camera not operating correctly for MCDADE at 1425 West Greenfield Avenue, Milwaukee, Wisconsin.

79. CS-2 was asked by STAIR within the last month to go to the address of 1425 West Greenfield Avenue, Milwaukee, Wisconsin.

80. CS-2 traveled to 1425 West Greenfield Avenue, Milwaukee, Wisconsin and entered through the front door. The CS-2 stated that from the front door one enters into the front sitting room area. The CS-2 observed in this front sitting room area approximately six males all with semiautomatic firearms and extended magazines hanging from their pockets.

81. CS-2 example that this room opens into the kitchen area, where CS-2 observed two females seated at a table and MCDADE standing at the table. CS-2 stated MCDADE had an assault style rifle leaning against the wall next to him and approximately another six other males

all armed in the same manner as the front room standing about. In the kitchen area the CS-2 observed MCDADE with approximately 250 grams of cocaine. CS-2 observed MCDADE appeared to be in the process of cooking the 250 grams of cocaine in the microwave to make crack cocaine. The CS-2 observed a two Quart Pyrex measuring cup with baking soda and water. The CS-2 was able to smell the substance in the microwave and was able to see and smell that the substance was cocaine. The CS-2 described one of the females at the table as being close to MCDADE (possibly romantically involved) due to the manner that they interacted and was described as a brown skinned Puerto Rican female. The other female at the table was described as a heavier set and light skinned. The CS also observed a rear room where there was located maybe as many 15 people, most female, approximately three where actively smoking from glass crack cocaine pipes. The CS believed there was rear access to the residence from this room and costumers were brought to this room through the rear door. The CS-2 observed some were armed as well.

82. The CS-2 observed cameras in the rear pantry style room off the kitchen. This room consisted of a large approximately 50 inch TV with multiple camera screens playing live views. There was a mouse attached to the system which the CS-2 believed was a hard drive system. The CS-2 believed there were approximately 15 cameras playing on the screen and appeared to capture the entire block was visible. CS explained that these were the cameras that STAIR discussed needing to be fixed for MCDADE. The CS-2 described there was a person sitting monitoring this screen and that it appeared that the person was assigned with this task. Based on training and experience, the security system established at 1425 West Greenfield Avenue, Milwaukee, Wisconsin, described by CS-2, in which STAIR indicated did not operate

correctly, is set up in a way to protect a drug stash house, not a residential home being rented out for legit means.

83. CS-2 stated when leaving 1425 West Greenfield Avenue, Milwaukee, Wisconsin, CS-2 was escorted to CS-2's car, which was parked about a block away. CS-2's escort was an armed individual from inside the residence of 1425 West Greenfield Avenue, Milwaukee, Wisconsin. The CS-2 was escorted all the way to CS2's car and then got into CS-2's car. CS-2 then drove the escort back to 1425 West Greenfield Avenue, Milwaukee, Wisconsin, and then left the area.

84. CS-2 knows Russell MCDADE by the nickname of "Ro" and knows "Ro" to use the phone number of 414-439-7468 and Sam STAIR to use **414-732-3682 (Target Cell Phone 3).**

85. CS-2 further explained that STAIR appeared to be obtaining money from MCDADE for allowing MCDADE to run stash houses at S2 properties.

**E. Jail Calls with STAIR's Telephone Number 414-732-3682 (Target Cell Phone 3)**

86. Case agents reviewed recorded jail calls to STAIR's telephone **414-732-3682 (Target Cell Phone 3)** and found that there was a consistent caller, believed to be William Meeuwsen who is convicted of First-Degree Reckless Homicide, Deliver Drugs, Kewaunee County Case Number 2020CF63. Case agents reviewed all the calls from May 30, 2025 through July 26, 2025 and found five recorded jail calls from two different facilities, four from the PIN of William Meeuwsen at Jackson Correctional Institute and one from the PIN for Michael Froncek at Winnebago Correctional Institute. During one record jail call, STAIR and the inmate

discusses a business plan of renting properties to drug traffickers, but appears to brush it off like a joke.

87. In review of the recordings, case agents believe all the calls were answered by the same male voice, which case agents knows to be STAIR's voice from review of other interviews of STAIR's with the media.[6] Further, other matters discussed during the calls are consistent with STAIR, including the callers referring to him as "Sam" and discussion regarding his rentals/collection of rent.

88. In a recorded jail call, 752102557_117744_07-08-2025_17-50-26_1-414-732-3682_93466, between the PIN of William Meeuwsen and STAIR's telephone **414-732-3682 (Target Cell Phone 3)**, the caller (inmate) and STAIR discuss how STAIR is working to place inmates in his properties as a halfway house. STAIR discussed how the inmates would come out of jail, and he would use the rooming house for the inmates and inmates engaged in rehab.

**Inmate**: Not to mention Sam, you know what happens, but all that money, all that money, that state money, you can double bubble all day long in there. You know.
**STAIR**: Oh yeah, yeah.
**Inmate**: Oh hell yeah. I mean, I don't know what you are getting now, but... you can..
**STAIR**: Oh yea, that would be nice. I mean, the guys in there now are so bad. Like, we are pretty empty, because, you know, it used to be just drunks and regular folks, and now its the heroin addicts and they just, you know.
**Inmate**: Oh, they fold over and fall down. Yep.
**STAIR**: Yep. They don't pay a thing. They'll bring in 10 people. They, you know, constantly kicking them out. They can't seem to, you know, make their payment. They get their money and owe their dealer too much. I don't know what it is, but.
**Inmate**: (Laughing) No don't. I was going to say, you're better off getting the dealer to move in (laughing) and work through him. (laughing).

[6] "$7M in rental assistance available for those in 3 counties as public housing eviction ban set to expire July 25, Published on July 9, 2020, https://www.fox6now.com/news/7m-in-rental-assistance-available-for-those-in-3-counties-as-public-housing-eviction-ban-set-to-expire-july-25 (view August 16, 2025).

**STAIR:** I know (laughing).
**Inmate:** That's crazy (laughing). That's crazy (laughing). I got an idea. Let's find a couple guys. Let's find a couple guys and make them a dealer. (laughing).
**STAIR**: Yeah (laughing).
**Inmate**: No. Let's not.
**STAIR**: Wouldn't regret it. (laughing). Just kidding.
**Inmate**: Exactly. (Laughing). That's crazy though.
**STAIR**: You almost, you almost think someone would do that. You know, set up.
**Inmate**: You know.
**STAIR**: But I bet, I bet they have the same problem where they can't collect either, so.. (the call continued).

**F. Identification STAIR's Telephone Number 414-732-3682 (Target Cell Phone 3)**

89. Case agents reviewed database searches and learned that the phone number associated with STAIR was **414-732-3682 (Target Cell Phone 3)**. This is also the number listed for STAIR in Law Enforcement contacts such as West Milwaukee Police Department Activity # 23-002909 (building owner) of 5101 West National Avenue, West Milwaukee, Wisconsin from April 27, 2023.

90. Case agents are aware that MPD were in contact with STAIR regarding nuisance property at 1934 West Greenfield Avenue, Milwaukee, Wisconsin. On July 13, 2025, MPD officers from the District Two Community Partnership Unit obtained information regarding the property manager of 1934 West Greenfield Avenue, Milwaukee, Wisconsin, who was identified as "Sam STAIR", based on prior contacts. MPS attempted to reach the management company regarding the nuisance property.

91. On July 28, 2025 MPD conducted a check of an alleged vacant property at 1934 West Greenfield Avenue, Milwaukee, Wisconsin. MPD conducted the check due to numerous complaints regarding the property being frequented by transients, drug users, prostitutes and is

adjacent to several suspected drug houses. The property has become a nuisance in the community. MPD officers observed several individuals sitting on the west steps of 1934 West Greenfield Avenue, under the posted "No Trespassing" sign. Officers spoke with several individuals, including a black male (captured on body camera) who was wearing a pair of binoculars around his neck. The black male declined to explain why he was wearing binoculars. The black male told officers he had permission to be at location, from the property owner "Sam". The black male called "Sam" and handed officer the phone. The caller identified himself as Samuel P. STAIR and the manager of the property of 1934 West Greenfield Avenue. Officers observed the number dialed for STAIR was **414-732-3682 (Target Cell Phone 3)**.

92. STAIR explained to officers that no one was supposed to be trespassing on the property. STAIR stated he "hired" an individual by the name of "RUSSEL MCCARTHY" to be security and keep people away, as well as to find a tenant for the location.

93. MPD Officers, reviewed records and observed prior contacts with a Samuel P STAIR, DOB: XX/XX/1974, for telephone number **414-732-3682 (Target Cell Phone 3)**.

94. On July 29, 2025, MPD officers sent an email to maintenance@s2support.com and addressed it to "Sam" as a follow-up to previous contact. Case agents were informed that no reply has been received yet.

**H. Historical Call Detail Records**

95. Case agents have reviewed the call records of MCDADE's prior telephone numbers 414-514-3794 and 414-439-7468. Case agents observed that between the dates of May 1, 2025 and August 12, 2025 there were 87 communications total between STAIR's telephone number **414-732-3682 (Target Cell Phone 3)** and 414-514-3794 and 414-439-7468. There were

(84) communications between STAIR's telephone **414-732-3682 (Target Cell Phone 3)** and MCDADE's prior telephone 414-439-7468. There were three communications between STAIR's telephone number **414-732-3682 (Target Cell Phone 3)** and MCDADE's prior telephone number 414-514-3794.

96. Case agents continued to monitor court authorized electronic surveillance of MCDADE's prior telephone numbers 414-514-3794 and 414-439-7468 and STAIR's telephone **414-732-3682 (Target Cell Phone 3).** Case agents observed that MCDADE's telephone 414-514-3794 began to show a loss of service and 414-439-7468 was showing information that was outside the normal pattern of locations and calls. Case agent also observed STAIR's telephone **414-732-3682 (Target Cell Phone 3)** was no longer the frequent contact with MCDADE's phones. Based on this information and MCDADE's historical pattern of changing telephone numbers to evade law enforcement detection when engaged in drug trafficking and other illegal activities, case agents then began to attempt to identify possible new telephone numbers for MCDADE.

### I. Surveillance of MCDADE's Stash House Owned by STAIR Located at 1425 West Greenfield Avenue

97. Case agents have continued to conduct physical and electronic surveillance, since court authorized electronic surveillance of the MCDADE'S prior telephone numbers 414-514-3794 and 414-439-7468. Information obtained, has been consistent with MCDADE engaged in ongoing drug trafficking and using 414-514-3794 and 414-439-7468**.** Information obtained from the court authorized electronic surveillance has assisted case agents in identify co-conspirators, possible drug sources, and additional locations connected to the drug

trafficking organization and MCDADE.

98. Case agents have review court authorized electronic surveillance of the 414-514-3794 and 414-439-7468 several trends from 414-514-3794 and 414-439-7468.

99. First, 414-514-3794 and 414-439-7468 appeared to generally travel in a pattern consistent with MCDADE's former telephones likely being possessed together. Further, case agents have observed that between July 1, 2025 and August 12, 2025, that the 414-514-3794 and 414-439-7468 were commonly and consistently are located near the 1400 block of West Greenfield Avenue. This is a location where the 414-514-3794 and 414-439-7468 appeared to be on nearly a daily basis, the phones appear communicating with towers in the area of 1425 West Greenfield Avenue, Milwaukee, Wisconsin every day from July 1, 2025 to August 12, 2025; except for July 7, 2025 and July 9, 2025.

100. Case agents have also observed MCDADE in this area, specifically at 1425 West Greenfield Avenue, Milwaukee, Wisconsin.

101. On July 15, 2025 at approximately 9:10 a.m., case agents were conducting surveillance in the area of 1425 West Greenfield Avenue, Milwaukee, Wisconsin. Case agent observed a white female wearing a nursing style shirt with blond hair exit a white Toyota Camry, bearing Wisconsin license plate AUZ-7907 (Camry). The Camry was parked in front of the address of 1425 West Greenfield Avenue, Milwaukee, Wisconsin. The unknown female walked into the east gate area of the residence 1425 West Greenfield Avenue, Milwaukee, Wisconsin. Followed after her is a male in a blue boonie hat that has been captured numerous times in video entering and exiting the front door of 1425 West Greenfield Avenue, Milwaukee, Wisconsin in the past weeks. Parked directly in front of the Camry is a black Saab Station

Wagon, bearing Wisconsin license plate BAZ-8829 (Saab). Case agents review Wisconsin DOT records which indicated the license plate was registered to Travean Brookshire, DOB XX/XX/1982, with a listed address of 1512 South 21st Street, Milwaukee, Wisconsin,[7] which was updated on January 26, 2025 with DOT.

102. Moments later a different female wearing a blue and red jacket and camouflage pants is observed exiting 1425 West Greenfield Avenue, Milwaukee, Wisconsin. Approximately 2 minutes later the male with the boonie hat exited the east side gate of 1425 West Greenfield Avenue, Milwaukee, Wisconsin and walked out of view to the north, crossing the street.

103. At approximately 9:13 AM a black male with no shirt and a backpack came out of the front door of 1425 West Greenfield Avenue, Milwaukee, Wisconsin and walked to a Chevy SUV, bearing Wisconsin license plate BAH-8297 (Chevy) and stood at the passenger side in a manner as though interacting with persons inside the Chevy.

104. At approximately 9:15 AM the same black male with no shirt walks back to the front door of 1425 West Greenfield Avenue, Milwaukee, Wisconsin and knocks at the door of 1425 West Greenfield Avenue, Milwaukee, Wisconsin. Moments after the male with no shirt begins to knock at the door three individuals emerge from the Chevy and walk to the front door of 1425 West Greenfield Avenue, Milwaukee, Wisconsin. Case agents identified one of the males as MCDADE, one as a black male with the boonie hat and the third as a white male in a maroon Champs t-shirt (Figure 7).

[7] As previously noted, this property is owned by S2 Real Estate Group 3 LLC, with a registered agent as Sam STAIR.



(Figure 7)

105. Case agents observed MCDADE walk onto the porch area of 1425 West Greenfield Avenue, Milwaukee, Wisconsin. Case agents observed MCDADE was carrying a firearm, with what appeared to be an extended magazine under his left arm (Figures 8, 9 and 10 / circle in red). Case agents conducting surveillance also observed MCDADE manipulating what appeared to be two cell phones in his hands (Figures 8 and 9 /circle in blue).



(Figure 8)



(Figure 9)



(Figure 10)

106. Case agents review court authorized electronic surveillance for this same time period. Case agents observed that 414-514-3794 and 414-439-7468 appeared to be

communicating with towers near the area South 14th Street and West Greenfield Avenue. This would be consistent with MCDADE being in possession with 414-514-3794 and 414-439-7468 1425 West Greenfield Avenue, Milwaukee, Wisconsin. Case agents then observed MCDADE and the other two males enter 1425 West Greenfield Avenue, Milwaukee, Wisconsin.

107. At approximately 9:16 a.m. the white female in the nurse scrubs shirt leaves the side gate of 1425 West Greenfield Avenue, Milwaukee, Wisconsin and enters the Camry and leaves eastbound on West Greenfield Avenue. Based on training and experience, I am aware that this short, contact with 1425 West Greenfield Avenue, Milwaukee, Wisconsin, a known location in which MCDADE has engaged in drug trafficking in the past, would be consistent with a drug transaction.

### J. Identification of MCDADE's Telephone 414-460-9608 (Target Cell Phone 1) Review of Jail Call

108. Between August and September 2025, case agents reviewed jails calls between inmates known to communicate with MCDADE to identify MCDADE's telephone number **414-460-9608 (Target Cell Phone 1).** Case agents reviewed the following recorded jail calls between **414-460-9608 (Target Cell Phone 1)** and Amber Valadez and immediately recognized that **414-460-9608 (Target Cell Phone 1)** was consistently answered by the voice identified by case agents as MCDADE based on review of numerous other record jail calls and the investigation, except the last call when a female answered the phone for him:

- 764813267_553878_August 5, 2025_18-15-15_1-414-460-9608_55458;
- 777569193_553878_September 1, 2025_19-21-58_1-414-460-9608_55458;
- 777629439_553878_ September 1, 2025_20-36-02_1-414-460-9608_55458;
- 777731359_553878_ September 02, 2025_09-12-11_1-414-460-9608_55458;
- 777968039_553878_ September 02, 2025_18-00-22_1-414-460-9608_55458;
- 778188713_553878_ September 03, 2025_07-58-25_1-414-460-9608_55458;

- 778661933_553878_ September 04, 2025_08-02-56_1-414-460-9608_55458;
- 779023491_553878_ September 04, 2025_19-59-37_1-414-460-9608_55458;
- 779172575_553878_ September 05, 2025_09-10-03_1-414-460-9608_55458;
- 779759527_553878_ September 06, 2025_10-20-18_1-414-460-9608_55458;
- 780425623_553878_ September 07, 2025_12-23-08_1-414-460-9608_55458;
- 780614239_553878_ September 07, 2025_17-51-28_1-414-460-9608_55458;
- 780747309_553878_ September 07, 2025_20-18-55_1-414-460-9608_55458;
- 781371919_553878_ September 09, 2025_09-28-19_1-414-460-9608_4901;
- 780880281_553878_ September 08, 2025_09-32-59_1-414-460-9608_55458;
- 782922075_553878_ September 12, 2025_08-57-18_1-414-460-9608_4901;
- 787876817_553878_ September 20, 2025_10-31-06_1-414-460-9608_4901;
- 788223889_553878_ September 20, 2025_19-47-20_1-414-460-9608_55458; and
- 788824665_553878_September 21, 2025_20-08-45_1-414-460-9608_55458 (answered by female).

109. While reviewing these recorded jail calls between Amber Valadez and MCDADE's telephone number **414-460-9608 (Target Cell Phone 1)**, case agents observed that MCDADE spoke of "Stacey", who case agents know from previous investigation to be Stacey BERRY.

110. During recorded jail call between Amber VALDEZ's PIN and MCDADE's telephone number **414-460-9608 (Target Cell Phone 1)** (787876817_553878_09-20-2025_10-31-06_1-414-460-9608_4901) MCDAD. states that he is busy and are moving the house up the street. MCDADE states that "these mother fuckers did 10,000 last night, I fell asleep they went nuts…". At approximately 12 minutes into the recording of the call MCDADE states to someone "I got boy on the way". Case agents know from training and experience "boy" is used to reference heroin and other opioids by drug dealers and "girl" is referred to cocaine. Case agents are also aware based on the investigation into the DTO, that MCDADE often uses multiple drug houses to engage in drug trafficking in an attempt to evade law enforcement.

111. During the final call from Amber VALDEZ's PIN to MCDADE's telephone **414-**

**460-9608 (Target Cell Phone 1)** (788824665_553878_09-21-2025_20-08-45_1-414-460-9608_55458), case agents heard a female answer the phone and identify herself as "Lowlee". "Lowlee" states that she is "Ro's girlfriend". "Lowlee" states that Ro is on porch and she begins to speak to VALADEZ about her relationship with "Ro". The call ends with "Lowlee" confronting an individual that sounded like MCDADE about him still speak with VALDEZ and the call abruptly ends.

**L. Identification of MCDADE's Telephone 414-243-1392 Review of Jail Call**

112. Case agents also reviewed recorded jail calls from Russell McDade Jr.'s PIN. Case agents were aware that McDade JR was arrested in August 2025 related to drug and firearm offenses and charged in Milwaukee County Case 2025CF3849.

113. Case agents reviewed a recorded jail call between McDade Jr's PIN and telephone 414-242-8847 on September 11, 2025 at approximately 12:33 PM (736903624_2025014529_09-11-2025_12-33-40_1-414-242-8847_11102.mp3). Case agents reviewed law enforcement databases and believe telephone 414-242-8847 is used by Shirtreal Roby, who is believed to be the biological mother to McDade Jr based on the content of the calls with this number. During the beginning of the call I noted that it appeared the female as she answered the phone was giving a number to someone to attempt to call – this number can be heard as she appears to call it out to the someone nearby, 414-243-1392. During this call the female answering the phone and states to McDade Jr that she is trying to call his father and he is not answering, The female adds that he (McDade Jr's father) is acting weird. At approximately 5 minutes and 22 seconds into the recording there appears to be a second phone ring and the female appears to pick it up. The female states that she has Junior on "loud speaker" and case agents can hear the voice of

MCDADE (Sr.) stating "tell him don't say nothing out of order please". McDade Jr. states that he needs his (MCDADE (Sr.)) numbers and he wishes to speak with him (MCDADE (Sr.)). MCDADE (Sr.) does not reply and the call ends shortly after with McDade Jr. stating "Don't worry about it". Case agents recognize MCDADE (Sr.) voice on this record call based on review of other record jail calls and the investigation into MCDADE (Sr.).

114. Case agents reviewed a recorded jail call between McDade Jr's PIN and telephone 414-242-8847 (Shirtreal Roby) from September 13, 2025 at approximately 1:06 PM (737016250_2025014529_09-13-2025_13-06-11_1-414-242-8847_12102). During this call McDade Jr. calls Roby "Mom" and they speak at length about McDade Jr.'s father not providing a phone number for McDade Jr. to speak to him (MCDADE Sr.). At the beginning of the call Roby states that McDade Jr.'s father is calling on the other line and she states she is going to merge the calls. Case agents can hear a male voice, which case agents recognized as MCDADE Sr. based on review of other jail calls and the investigation. MCDADE Sr. addressed McDade Jr. as "Junior". MCDADE Sr. states that he has not spoken with McDade Jr. because people are listening to McDade Jr.'s calls. MCDADE Sr. later tells McDade Jr. that he will give McDade Jr.'s mother a phone number for McDade Jr. to reach MCDADE Sr. at in the following days. McDade Jr. is upset that his father is not more supportive and explains to him that this is part of his life style to be locked up and he needs a number to contact his father.

115. Case agents reviewed a recorded jail call between McDade Jr's PIN and telephone 414-242-8847 (Shirtreal Roby) from September 14, -2025 at approximately 3:56 PM (737077276_2025014529_09-14-2025_15-56-45_1-414-242-8847_14102). Roby answers the phone and speaks to McDade Jr. about the fact that his little brother went to Wisconsin Dells.

They discuss that it is difficult to speak with his father again. Roby asks if McDade Jr. want to have her merge a call. McDade Jr. states yes and after a short pause, case agents hear a male voice, which they recognize to be MCDADE Sr. based on review of other recorded jail calls on the investigation. MCDADE states that he does not have a phone at this time because he does not have the correct SIM card. MCDADE Sr. gives to McDade Jr the number of 414-640-1926 to contact MCDADE Sr. through, which appears to actually be "Jay's" number. MCDADE Sr. states that he doesn't want his son to speak so much on this phone. McDade Jr. states "these people ain't worried about me", indicating McDade Jr.'s belief that law enforcement are not listening into his recorded jail calls. McDade Jr. addresses his father as "Pops' during this call and also speaks to him about spending time with his little brother. MCDADE Sr. becomes upset about this admonition from his son and tells McDade Jr. to call him on "Jays" number. McDade Jr. and his mother then remain on the phone and speak about being upset with MCDADE Sr. and his lack of communication. McDade Jr. states: "them houses gonna get nailed he gonna keep playing". Based on the investigation into the DTO, case agent believe this statement is a reference to MCDADE Sr.'s drug house. Roby then states that she has a video on her phone right now "that is so crucial, so critical". McDade Jr. speaks more about his feeling of being used like "a pawn". Based on the investigation into the DTO with would be consistent with how MCDADE Sr. has other individuals dealer controlled substances and control the drug houses on his behalf in order to isolate himself from law enforcement.

116. Case agents reviewed other record jail calls made to MCDADE's telephone number 414-243-1392 including from inmate Randy Roman Olson PIN at Drug Abuse Correctional Center on August 31, 2025 at 11:15 AM t (776795891_202997_08-31-2025_11-15-

45_1-414-243-1392_97028). Case Agent reviewed the call and immediately recognized the male voice of the person answering the phone to be Russell MCDADE Sr.

117. Case agents reviewed record jail calls made from Marquan Owens PIN on September 22, 2025 at 10:37 AM to 414-243-1392 (788983861_556929_09-22-2025_10-37-41_1-414-243-1392_56861). Case agents immediately observed that the phone was answered by the voice of Russell MCDADE Sr. It should be noted that Marquan Owens was a frequent caller to Russell MCDADE's prior telephone number 414-439-7468. During this call Owen's states that it is "Quan" and questions MCDADE about when he was ever going to answer this number.

**M. MCDADE's Contacts to Law Enforcement Agencies**

118. As described above, MCDADE has a history of attempting to voluntarily assisting law enforcement, while he has been being investigated. During these attempts he has provided law enforcements agencies with contact numbers which has assisted case agents in their investigation.

**a. MCDADE Contact to Waukesha Sheriffs using 414-439-7468**

119. Waukesha County Sheriff Detectives Aaron Hoppe and Daniel Coates were contacted in April 2025 by a male reporting to be "RJ" / "Russ" from the numbers 414-439-7468 and 414-491-0454. Prior to these calls, Detective Hoppe received numbers 414-439-7468 and 414-491-0454 during a debrief from an inmate charged in a pending federal matter. The inmate wanted "RJ"/"Russ" to conduct 3rd party cooperation on the inmate's behave and stated "RJ"/"Russ" was the inmate's relative, "Russell McDade". Detective Hoppe was not interested and was aware of the investigation into MCDADE.

**b. MCDADE Contact to DEA using 414-439-7468**

120. On May 28, 2025, telephone number 414-439-7468 contacted the Eastern District of Wisconsin United States Attorney's Office**.** The caller was a male who identified himself as Russell MCDADE. MCDADE stated that he had important information to turn over to law enforcement. MCDADE's contact information was provided to DEA Task Force Officers (TFOs) Sean Mayerbock and Tim Filter.

121. DEA TFOs Mayerbock and Filter called 414-439-7468 and spoke to an individual that identified himself as "Russ". DEA TFO Mayerbock had previously spoken with MCDADE regarding a drug investigation and was familiar with his voice. TFO Mayerbock identified "Russ" as MCDADE. The conversation was recorded, given the ongoing investigation into MCDADE. TFOs Mayerbock and Filer reported that during the call with MCDADE, there was a third party who appeared to have been called from another phone in possession of MCDADE. This would be consistent with MCDADE possessing more than one cellphone. This party was identified as "Mike".

**c. MCDADE Contact to ATF using 414-439-7468**

122. Case agents were notified that on July 28, 2025, MCDADE called the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and requested to cooperate with special agents. MCDADE provided the name "RJ" and stated he previously cooperated with agents at ATF. MCDADE indicated he had information about a shooting that occurred on 18th and Arrow that occurred about an hour before he called ATF. MCDADE also stated that he had information about a person supplying rifles to prohibited person in Milwaukee. Special Agent Matthew Mason pressed the caller for additional information if the caller wanted to actually cooperate, and the called then provided the name "Russell MCDADE" and telephone number 414-439-

7468. Agent Mason indicated he would meet with MCDADE on July 29, 2025. However, Agent Mason became aware of the federal investigation into MCDADE and MCDADE's past attempts to cooperate in order to obtain information on his own investigations. On July 30, 2025, Agent Mason received a call from 414-439-7468 but at this point Agent Mason texted 414-439-7468 that he would call back later, attempting to avoid MCDADE.

**d. MCDADE Contact to DEA using 414-243-1392**

123. Case agents were notified that on September 19, 2025, telephone number 414-243-1392 sent texts to DEA TFO Robert Gregory. The individual identified themselves as "R.J." and indicated that they wished to give information to the police. TFO Gregory was already aware of the investigation into MCDADE and prior attempts to contact law enforcement. TFO Gregory was also aware that "R.J." is a nickname used by MCDADE and notified case agents.

**e. MCDADE Contact to MPD using 414-243-1392**

124. Case agents were notified that on September 25, 2025, a male, believed to be MCDADE based on the investigation into telephone number 414-243-1392 and MCDADE's historical tactics of injecting himself in law enforcements investigation following search warrants of drug houses connected to his trafficking business, called the MPD sensitive crimes. The male requested to speak with MPD Detective Baldwin, who was unavailable at the time. Detective Chauncey Harris, familiar with MCDADE's tactics spoke to the caller. The male then indicated he MCDADE provided the name "Jay". The male stated he knew detectives were involved in an investigation of "Union Street". The male stated he wanted to provide information about a missing female. The male then inquired about Detective Harris' ethnicity and previous work location, district assignment. The male stated he would provide an address to

a house on 25th and Mineral, which Detective Harris encouraged the male to text the information. The male requested to meet him for additional information. Given historical concerns about MCDADE methods of using guise of providing information to law enforcement, when MCDADE is really actually attempting to learn what information law enforcement may have obtained against him, detective declined to meet. No further contact has been made with "Jay" at 414-243-1392.

**N. Surveillance of STAIR September 2025**

125. Case agents observed through electronic and physical surveillance that STAIR's movements where generally consistent with the movement of STAIR's telephone number **414-732-3682 (Target Cell Phone 3)**.

126. Case agents also reviewed electronic surveillance from near S2 Real Estate Building located at 2925 West Lincoln Avenue, Milwaukee, Wisconsin.

127. Case agents were able to document that **414-732-3682 (Target Cell Phone 3)** consistently communicated with towers in the area of STAIR's known residence, 11512 West Woodside Drive, Hales Corners, Wisconsin. Case agents observed consistently that during weekdays (Monday through Friday) **414-732-3682 (Target Cell Phone 3)** would leave the area of 11512 West Woodside Drive, Hales Corners, Wisconsin and consistently be seen on electronic surveillance arriving in his **Tesla**, parking on the east side parking lot of the S2 Real Estate Building. Case agents observed STAIR exiting his **Tesla** and entering the east side entrance of the building. The following is a list of the observations dates/time by case agents:

- 9-2-2025 –STAIR captured arriving at S2 Building at 11:47 AM;
- 9-3-2025 - STAIR captured arriving at S2 Building at 12:32 PM;
- 9-4-2025 - STAIR captured arriving at S2 Building at 1:31 PM;

- 9-5-2025 - STAIR captured arriving at S2 Building at 11:38 AM;
- 9-8-2025 - STAIR captured arriving at S2 Building at 11:01 AM;
- 9-9-2025 - STAIR captured arriving at S2 Building at 12:08 PM;
- 9-10-2025 - STAIR captured arriving at S2 Building at 11:52 AM;
- 9-11-2025 - STAIR captured arriving at S2 Building at 11:52 AM;
- 9-12-2025 - STAIR captured arriving at S2 Building at 12:11PM;
- 9-15-2025 - STAIR captured arriving at S2 Building at 11:17 AM;
- 9-16-2025 - STAIR captured arriving at S2 Building at 11:21 AM;
- 9-17-2025 - STAIR captured arriving at S2 Building at 12:14 PM;

128. Case agents also conducted electronic surveillance in the evening hours and observed that STAIR would move in conjunction with **414-732-3682 (Target Cell Phone 3)** after leaving the area of S2 Building 2925 West Lincoln Avenue, Milwaukee, Wisconsin and appeared to travel to the location of his residence, area of 11512 West Woodside Drive, Hales Corners, Wisconsin again during the evening hours. Based on my training and experience, these observations were consistent with STAIR possessing **414-732-3682 (Target Cell Phone 3).**

129. On September 8, 2025, case agent conducted a surveillance operation at the S2 Real Estate building located at 2925 West Lincoln Avenue, Milwaukee, Wisconsin. Case agents observed that STAIR left the building on September 8, 2025 at approximately 5:44 pm in his **Tesla**. STAIR drove his Telsa to 6405 South 27th Street, Franklin, Wisconsin (Badger Mobile Home Community). At approximately 6:20 pm, case agents observed STAIR park his **Tesla** and walk to the location of Lot # 10. (Figure 11) Case agent observed STAIR speaking with a heavy set white male outside this location. For a short time the two of them walked out of view behind a vehicle.

130. At approximately 6:31 pm, case agents observed STAIR walking back to his **Tesla**. Case agents used a recorded UC line to contact STAIR's telephone **414-732-3682 (Target Cell Phone 3)** at this time. As case agents contacted **414-732-3682 (Target Cell Phone**

**3),** case agents observed STAIR reach his right hand into his right pocket and appeared to manipulate something. Case agents then observed that STAIR's telephone **414-732-3682 (Target Cell Phone 3)** call was sent to voicemail. This would be consistent with STAIR manipulating **414-732-3682 (Target Cell Phone 3)** and ignoring the UC call placed by case agents.



(Figure 11)

131. Case agent then followed the STAIR in his **Tesla** to the area of his residence 11512 West Woodside Drive, Hales Corners, Wisconsin and observed the **Tesla** parked inside the garage at his residence at 6:52 PM.

132. Case agents were already familiar with the location of 6405 South 27th Street, Franklin, Wisconsin (Badger Mobile Home Community) from the investigation into the DTO. Case agents previously reviewed a recorded jail call between Amber VALADEZ's PIN to MCDADE's telephone number **414-460-9608 (Target Cell Phone 1)** on September 3, 2025 at 7:58 am (778188713_553878_09-03-2025_07-58-25_1-414-460-9608_55458). During the call VALADEZ asks MCDADE Sr. to give the phone to "Wally", who case agents have identified as

Walter RINGERSMA (DOB XX/XX/1965), one of MCDADE's drug runners. While VALADEZ is speaking to RINGERSMA, RINGERSMA states that he plans to move to the area of S 27th St. / College where "Sam" has a mobile home to rent on the 15th of the month. Case agent believes that RINGERSMA is referring to the trailer park where STAIR was observed by case agents on September 8, 2025. RINGERSMA speaks about the fact that he is diagnosed with cancer and wants stop doing "girl" for a portion of his life. Case agents know from training and experience that "girl" is a common term used by drug dealers and users to mean cocaine. RINGERSMA then states that he was caught with "2,840 grams of powder", but was not prosecuted because he said he was not inside the room and therefore he didn't know what was in the room. Case agent knows from training and experience that "powder" is a term used by drug dealer and users to refer to powdered cocaine, as opposed to "crack" cocaine which has been mixed with cutting agents and "cooked". Case agents are aware the RINGERSMA was arrested in 2025 related to multiple kilograms of cocaine being seized from a hotel room.

133. Case agent also knows that although MCDADE had changed his numbers **414-460-9608 (Target Cell Phone 1)** and 414-243-1392**,** there is ongoing communication between MCDADE's phone 414-243-1392 and STAIR's phone number **414-732-3682 (Target Cell Phone 3),** consistent with them still engaged in drug trafficking. A review of the call detail records for STAIR's phone number **414-732-3682 (Target Cell Phone 3)** show that between August 28, 2025 and September 16, 2025 there were 38 communications between **414-732-3682 (Target Cell Phone 3)** and 414-243-1392. Case agents further observed there was no communication between **414-732-3682 (Target Cell Phone 3)** and **414-460-9608 (Target Cell Phone 1)**. This communication between STAIR's **414-732-3682 (Target Cell Phone 3)** and

MCDADE's telephone 414-243-1392 (which appears to be used for more personal business) is also consistent with the past business line communications, although there were a few occasions when STAIR's phone would communication with the old "Dope Line" (414-514-3794) associated with MCDADE this communication was far less frequent.

134. Case agent also knows from training and experience in drug investigations that phones are a vital part of the business model that is used by those engaged in drug distribution. Due to this fact drug traffickers know that phones become a vital portion of the case agents' investigations used to prosecute drug traffickers. Therefore, at times when drug traffickers believe that they might investigated they will often times switch phones numbers as a precaution to deter the law enforcement investigation. It should be noted that case agents have observed that MCDADE has previously changed both his phone numbers during the months of March and April of 2025.

**O. Search Warrant at 1512 South 21st Street, Milwaukee, Wisconsin**

135. On September 23, 2025, MPD executed a state search warrant at 1512 South 21st Street, Milwaukee, Wisconsin, which was previously identified as a stash house for MCDADE, owned by S2 Real Estate Group 3 LLC, Sam STAIR. Prior to the search warrant, MPD officer contacted a traffic stop Javarius WILLIAMS, who was observed leaving 1512 South 21st Street, Milwaukee, Wisconsin just prior to the traffic stop. WILLIAMS was on a Facetime call at the time of the traffic stop. Within less than five minutes of WILLIAMS traffic stop, numerous subjects, including Stacey BERRY and AV-1, were observed leaving 1512 South 21st Street, Milwaukee, Wisconsin and going to 1541 South Union Street, Milwaukee, Wisconsin, where MPD also executed a state search warrant.

136. Inside 1512 South 21st Street, Milwaukee, Wisconsin, law enforcement located discovered multiple operational digital scales, hundreds of hypodermic needles, numerous boxes of baking soda (a common item used to make crack cocaine) and over a dozen nasal doses of Naloxone (which is used to counter the effects of an overdose). Officers also located numerous identifiers for BERRY as well as multiple notebooks, which based on training and experience were consistent with the sale of narcotic. Law enforcement also located a black 9 mm polymer semi-automatic handgun (no serial number) and a .380 Ruger, bearing serial number R75-508058, semiautomatic handgun. MPD also located a green leafy substance which tested positive for THC with a total weight of 615 grams; a grayish powdery substance which tested positive for cocaine and weighed .42 grams; a bright orange oval pill which tested positive for amphetamine and weighed .70 gram.

137. MPD also located in another room at 1512 South 21st Street, Milwaukee, Wisconsin, a note that stated "Basement Rules; Don't Touch what doesn't belong to you; 20 min sessions – add-ons must be $10 or more to obtain more session mins to stay inside; If you make a mess clean it up or you will be suspended from sessions".

138. MPD also located a sign on a room which was consistent with MCDADE being connected to the property (Figure 12). The sign stated "No one allowed (even if im in the room) ONLY PEOPLE ALLOWED IN ARE… Stacey Ro G If you are NOT ONE of These 3 people DO NOT ENTER! BTW DON'T ASK ME FOR SHIT! ANSWER IS NO!!! Based on my training, experience, and investigation into the DTO, this sign is consistent with Stacey BERRY (Stacey) "G" and MCDADE (Ro) likely being in control of this stash house (1512 South 21st Street, Milwaukee, Wisconsin). Further, the statement "DON'T ASK ME

FOR SHIT!" would likely refer to obtaining free controlled substances from the drug dealer put in charge of the stash house.




(Figure 12)

139. On September 28, 2025 Stacey BERRY and several other individuals were charged for firearm and drugs offenses in relation to the state search warrants at 1512 South 21st Street, Milwaukee, Wisconsin, and 1541 South Union Street, Milwaukee, Wisconsin in Milwaukee County Cases 2025CF4512, 2025CF4514, 2025CF4513, and 2025CF4515.

140. Case agents spoke with AV-1, who was also present at 1512 South 21st Street, Milwaukee, Wisconsin, and 1541 South Union Street, Milwaukee, Wisconsin during the search warrants. During the interview AV-1 was in custody regarding a probation violation. AV-1 has prior convictions for misdemeanor property offense, disorderly conduct, and drug possession. AV-1 also has a prior felony drug offense.

141. AV-1 stated she meet "Ro", who she identified has a "legal name" of "Russell" through another friend around March 2024. AV-1 stated "Ro" is a drug dealer and deals in a

variety of controlled substances including cocaine and heroin. AV-1 stated "Ro" worked with S2 Realty and "Sam". AV-1 stated that "Ro" rented 1512 South 21st Street, Milwaukee, Wisconsin and another location on 14th and Greenfield (identified by case agents as 1425 West Greenfield Avenue, Milwaukee, Wisconsin) from "Sam" at S2. AV-1 also stated that "Jeanett", a girlfriend of "Ro" also worked for S2. AV-1 stated that S2 would get notice from law enforcement if police were going to raid S2's properties and Jeannett would let "Ro" know before police raided the property. AV-1 stated "Ro" had her clean up property for S2 a few times. AV-1 stated her received a personal check at S2 written by "Sam", but Jeanett provided it to AV-1.

142. AV-1 stated "Ro" let AV-1 live at 1512 South 21st Street, Milwaukee, Wisconsin but that is got "too hot", so she moved to 14th and Greenfield for a short period of time. AV-1 explained that she meant too much attention was coming to the residence due to the amount of drug trafficking of the 1512 South 21st Street, Milwaukee, Wisconsin. AV-1 stated that "Stacey" was released from prison and eventually moved into 14th and Greenfield and began running the drug house for "Ro". AV-1 stated things then got "too hot" on 14th and Greenfield, so the drug house was moved back to 1512 South 21st Street, Milwaukee, Wisconsin. AV-1 stated "Stacey" ran things [referring to the drug house] for "Ro" at 1512 South 21st Street, Milwaukee, Wisconsin. AV-1 stated that 1541 South Union Street, Milwaukee, Wisconsin was a drug customer of "Ro's" not a drug house used by "Ro".

143. AV-1 further stated that she has observed "Ro" with kilograms of cocaine and multiple grams of heroin. AV-1 stated that "Ro" will use the residence at 14th and Greenfield to "cook" the cocaine to crack cocaine. AV-1 also described how the residence at 14th and

Greenfield has camera in the front and back and a TV inside that allows people to watch the cameras. AV-1 also stated that "Ro" carries a firearm. AV-1 stated there were cameras also at 1512 South 21st Street, Milwaukee, Wisconsin, but the cameras did not work.

144. AV-1 stated she owed "Ro" rent money for residing at 1512 South 21st Street, Milwaukee, Wisconsin. AV-1 stated that "Stacey" paid "Ro" for the money AV-1 was short. AV-1 stated that "Stacey" then made AV-1 engaged in penis to mouth sexual intercourse for money in order to repay "Stacey" for the money. AV-1 stated she had to do this twice, and it was with the same date. AV-1 stated that the first time she received $100 and the second time she received $40. AV-1 had to provide "Stacey" with all the money.

145. AV-1 further stated "Ro" was planning to move his drug house to 18th and Greenfield, near a gas station, just before the state search warrant at 1512 South 21st Street, Milwaukee, Wisconsin.

**P. Search of 1425 West Greenfield, Milwaukee, Wisconsin**

146. On October 14, 2025, Milwaukee Police Department executed a state search warrant at MCDADE's stash house, STAIR's property, 1425 West Greenfield, Milwaukee, Wisconsin. MPD observed MCDADE arrive at the stash house as a passenger of a Chevy Trailblazer shortly before the execution of the warrant.

147. When MPD executed the warrant, MCDADE and others inside the residence attempted to flee out of a window of the stash house. MPD arrested MCDADE.

148. Located on MCDADE was $2,097; a **smart flip phone blue Motorola razor with a brown case with stripes (Device A)**; and **a black Apple iPhone in a black case (Device B)**.

149. Inside 1425 West Greenfield, MPD located over 140 grams of a substance that tested positive for cocaine and 90 grams of a substances that tested positive for fentanyl in a trash can near where MCDADE and others attempted to run out the window.

150. Law enforcement also located: a Phoenix Arms Raven .25 Caliber handgun, numerous ammunition; **a gray Samsung touch screen cellphone with a black case, located in living room on the table in the center of the room (Device C)**; a gray Samsung touch screen cellphone with a black and pink case and Gucci lanyard, located in bathroom (Device D); **a black night OWL series BTWN8 surveillance footage DVR, located in the kitchen in a pink suitcase next to the refrigerator (Device E)**; digital scale; drug paraphernalia; items consistent with cooking crack cocaine. MPD also located a document with MCDADE's name on it in a bedroom. Also located inside the residence, MPD located a camera surveillance system. MPD officers seized **a Black SWANN DVR 8 Channel System, located in a bedroom (Device F)**, where there was also a digital scale and a suspected drug ledger. This was consistent with a surveillance system at MCDADE's stash house. It is important to note, this system was consistent with the surveillance system CHS #2 described to case agents and AV-1 also described. Law enforcement also found thousands of hypodermic needles and over a dozen nasal doses of Naloxone, which is used to counter the effects of an overdose.

151. Also located inside the residence was legal paperwork between Walter Ringersma, Samuel Stair, and [redacted] to form a partnership agreement of MKE Remodeling with each contributing $60,500 and with MCDADE's name also listed within the paperwork.

152. While law enforcement was at 1425 West Greenfield, an unknown subject contacted "Jeanette" from S2 Reality regarding the search warrant. Law enforcement observed on a Facetime call, "Jeanett" indicate STAIR would come to the property. STAIR later arrived at 1425 West Greenfield, Milwaukee, Wisconsin and spoke to law enforcement. STAIR provided several names of individuals that were supposed to be renting 1425 West Greenfield, Milwaukee, Wisconsin, none were MCDADE.

153. MCDADE was arrested and booked in Milwaukee County Jail.

**Q. Review of MCDADE Sr. Jail Calls**

154. Case agents reviewed jails calls from MCDADE's PIN while in custody at Milwaukee County Jail.

155. Case agents reviewed call 739110286_2025018513_10-20-2025_12-08-39_1-262-234-8917_14109 made on October 20, 2025. This call was made from MCDADE's PIN to telephone number 262-234-8917 (**Target Cell Phone 2)**, which MCDADE referred to as "Nephew" during the call. Based on the investigation into the DTO, case agents identified "Nephew" as Alberto L. BOFFIL Jr., a.k.a. "Nephew" (DOB XX/XX/07/07/2004), as described above. Case agents also previously identified telephone number 262-234-8917, (**Target Cell Phone 2)**, belonging to BOFFIL. Case agents reviewed law enforcement database and observed telephone number 262-234-8917 (**Target Cell Phone 2)**, has a service provider of Dish as of October 25, 2025.

156. During the record jail call, MCDADE directs BOFFIL to contact STAIR, which he does. Based on my training and experience, I know those engaged in criminal conduct will attempt to evade law enforcement detection on record jail calls, by have others place three-way

calls to co-conspirators, instead of calling them directing from jail. Further, based on numerous record jail calls reviewed during this investigation, I am aware that MCDADE will often use this technique.

157. During the record jail call MCDADE asks BOFFIL if he "talked to him?" referring to STAIR, which BOFFIL confirms. They discuss how there was damage to the house when "the crackhead went out the window". This information would be consistent with when MPD executed the search warrant and several people, including MCDADE attempted to flee out the window of 1425 West Greenfield. MCDADE then asks about BOFFIL discussing MCDADE's bail with him [STAIR]. MCDADE asks if BOFFIL has an "extra phone" by him to call him [STAIR]. Case agents then hear STAIR on the record jail call, who they recognize from review of other recorded jail calls and other consented recordings, and MCDADE refers to him as "Sam."

158. STAIR then states to MCDADE, "Man, I gave you a heads up that..ah, there's so much drama going on" and MCDADE speaks over STAIR and cuts him off stating "Sam, Sam, quite talking over the phone." MCDADE and STAIR continue discussing matters. STAIR states "your guys went over there, and they were supposed to clear up that place and they found all these people sleeping on the lower level." MCDADE responded "for real."

159. Eventually during the call MCDADE directs STAIR to go someplace where others are not around. STAIR then states, "I'm not worried if you are going to say they are investigating me, it's always BS, so I'm not worried about it." STAIR then goes on to make states that "it's not my business" and "it's a joke", apparently referring to the drug trafficking investigation by Milwaukee Police Department. MCDADE indicates it is something different.

STAIR replies by saying he is not by Jeanette. MCDADE and STAIR then appear to discuss things in a very crypted manner with MCDADE say, “you know what I mean” and “remember when I came through, right?” and “remember when I came out by your way” but without making full statements. MCDADE discussed “that dude that, that told on me had the whatchamacallit” and “they had me on camera or whatever” and “I don’t know who his wife is” and “you get what I’m saying Sam”. STAIR replies by stating that any money provided was for rent, tools, and whatever…all for rent. STAIR then indicates something regarding a place for “your aunt” and MCDADE was trying to help people out, but that STAIR is now done with that and if your having drama with these people, they will have to move out, so. STAIR then states he will call him back and hangs up. MCDADE then tells BOFFIL, “He’s scary, I’m cracking him”.

160. Also discussed between MCDADE and BOFFIL was how MCDADE was spending his money and collecting MCDADE’s debts. MCDADE discussed paying “J[redacted]’s mama $200-300 a day”. During the record jail call, MCDADE directs BOFFIL to call “Jeanett”. BOFFIL indicated he was “putting her through”, which appeared to be consistent with BOFFIL making a three-way call. Case agent then heard a female voice on the phone. During the call, MCDADE directed Jeanett to “go somewhere where I can rap with you real quick”. “Jeanett” responded “I’m by myself.” During the conversation with “Jeanett”, MCDADE ask her to talk with “dude” and indicates he just spoke with him on the phone and says “Sam”. This would be consistent with MCDADE speaking with STAIR. During the call, MCDADE, Jeanett, and BOFFIL discuss STAIR helping MCDADE with his bail. “Jeanett” stated during the call “he should have been 10 steps ahead”. Based on training, experience, and the investigation into the DTO, case agents believe this statement refers to STAIR warning MCDADE regarding the

police coming to search 1425 West Greenfield. They also discuss getting money back from the deposit and selling a car.

161. Based on my training and experience, this call would be consistent with STAIR, "Jeanett", BOFFIL and MCDADE working together in drug trafficking and STAIR attempting to provide MCDADE a "Heads up" that the residence was being watched by law enforcement. Further, MCDADE and STAIR appear to be ensured that they have the same details to provide regarding money transactions or other connections in case asked by laws enforcement.

162. Case agents reviewed call detail records for STAIR's telephone **414-732-3682 (Target Cellphone 3)** on October 20, 2025 at around 12:08 pm, at the time the recorded jail call appeared to show BOFFIL contact STAIR for MCDADE. Case agents observed BOFFIL's telephone number 262-234-8917 (**Target Cell Phone 2)**, contact STAIR's telephone **414-732-3682 (Target Cellphone 3)** October 20, 2025 at about 12:09 pm**.** Case agent observed that between October 19, 2025 and October 22, 2025 there were 24 contacts between BOFFIL's telephone number 262-234-8917 (**Target Cell Phone 2)**, and STAIR's telephone **414-732-3682 (Target Cellphone 3).**

**R. Interview with Citizen Witness Regarding MCDADE, STAIR, and BOFFIL**

163. Case agents spoke with [redacted], the mother of [redacted]. [redacted] stated that [redacted] is a cocaine user and was buying drugs from MCDADE. [redacted] stated that she learned that [redacted] may have provided MCDADE and STAIR over $60,000 in some type of a fraud and/or drug transaction. [redacted] stated she confronted STAIR about the matter and STAIR claimed that he thought it was fishy that MCDADE was always present when STAIR was writing out [redacted] checks for the investment back. STAIR

claimed to provide [redacted] $30,000 back in personal checks. STAIR told [redacted] at the time that he still owed an additional $25,000 to [redacted] STAIR provided [redacted] and [redacted] a business check for $25,000 that [redacted] used to open up a new account at Associated Bank. [redacted] explained that MCDADE got [redacted] to provide MCDADE that money also. [redacted] confronted MCDADE amount the money taken from [redacted] MCDADE admitted he took the money from [redacted] to purchase a kilogram of controlled substance. MCDADE and [redacted] made arrangements for MCDADE to repay [redacted] for the money he took from [redacted] Based on review of the recorded jail calls, this would be consistent with MCDADE paying "J[redacted]'s mama". [redacted] further stated "Nephew", identified by case agents as BOFFIL, contacted her when MCDADE was arrested using MCDADE's number, **414-460-9608 (Target Telephone 1).** "Nephew" stated [redacted] owed MCDADE $3,000 in suspected drug debt. This upset [redacted] given that MCDADE stole $60,000 from [redacted] identified her number as 414-[redacted].

**S. STAIR'S connection to Blaque Bar**

164. As part of the investigation into STAIR, case agent identified Blaque Bar, located at 1022 South 60th Street, West Allis, Wisconsin as a property owed by S2 Real Estate Group 5, LLC. Case agents reviewed Wisconsin Department of Financial Institutions, which shows that the registered owner of S2 Real Estate Group 5, LLC is Sam STAIR at the address of 11512 W Woodside Dr., Hales Corner, Wisconsin.

165. Case agents conducting surveillance of STAIR on October 21, 2025. At approximately 4:53 pm, case agent observed STAIR operating the **Tesla** pull in behind Blaque Bar located at 1022 South 60th Street, West Allis, Wisconsin. Given the location, case agents

were not able to observed what STAIR did once behind Blaque Bar. Approximately two minutes later, case agents observe STAIR pull out from the Blaque Bar in his **Tesla**. At approximately 5:49 pm case agents observed STAIR, in his **Tesla**, pull into side lot of S2 Reality, located at 2925 West Lincoln Avenue, Milwaukee, Wisconsin. At 5:50 pm STAIR exited the **Tesla** and walked inside S2 Reality carrying a red bag in his hand.

166. Case agents have previously observed a similar red bag during other days when conducting surveillance on STAIR and STAIR observing entering S2 Reality. Case agents review court authorized electronic surveillance during this time period and observed STAIR's telephone number **414-732-3682** (**Target Cell Phone 3**) general movement was consistent with STAIR and his **Tesla**'s travel.

167. Case agents have identified Blaque Bar to be operated by Martin Sinclair, who has a history of drug trafficking offenses. Case agents have had several traffic stops connected to suspected firearm and drug trafficking offenses at Blaque Bar, most recently on October 23, 2024 and October 24, 2025.

168. On October 23, 2025, West Allis Police Department conducted a traffic stop of Antwain A. JOHNSON. JOHNSON attempted to flee during the stop. Officers located a 9mm Taurus G2C semiautomatic pistol SN # AEH651528 (with holster and 21 unfired cartridges after arresting JOHNSON. JOHNSON was previously convicted of a felon and on supervision for Armed Robbery offense. JOHNSON provided statement that he works for Blaque Bar as a bouncer/bar back and during his arrest his cell phone was receiving texts from "The Blaque family".

169. On October 24, 2025, West Allis Police Department, conduct a traffic stop of

Deaja D. BAILEY, Tamyia M. HAYDON, Sanya M. BAKER and Kjae J. TURNER. Inside their vehicle, officers located 213 grams of marijuana, $4,300 USC, a Glock 22 handgun and five cell phones. Based on training and experience, this amount of controlled substance, number of cellphones, amount of case, and the firearm, would all be consistent with drug trafficking. During interviews of the occupants, officers were advised they were coming from Blaque Bar.

170. Based on training and experience, given the short contact at Blaque Bar by STAIR and the history of drug trafficking conduct connected with Blaque Bar and later observations of STAIR with the red bag, case agents believe STAIR's contact was consistent with a pick related to drug trafficking, likely proceeds.

**T. Call Detail Contacts**

171. Case agents reviewed call detail records for MCDADE's telephone number **414-460-9608 (Target Telephone 1).**

172. Case agents observed MCDADE's telephone number **414-460-9608 (Target Telephone 1)** has 55 contacts with [redacted]'s number 414-[redacted]7. Case agents further observed that MCDADE's telephone number **414-460-9608 (Target Telephone 1)** has had 38 contacts with [redacted]'s number 414-[redacted] since October 14, 2025, the date of MCDADE's drug arrest, eight of the contacts were calls from MCDADE's telephone number **414-460-9608 (Target Telephone 1)** to 414-249-4427 number. Based on my training and experience, in connection with the reviewed jail calls, this would be consistent with MCDADE having other members of the DTO running MCDADE's telephone number **414-460-9608 (Target Telephone 1)** while he remains in custody. Case agents also reviewed law enforcement databases and observed MCDADE's telephone number **414-460-9608 (Target Telephone 1)**

now has a service provider of AT&T.

173. Further, since MCDADE's arrest on October 14, 2025, case agents observed that MCDADE's telephone number **414-460-9608 (Target Telephone 1)** has made 422 outgoing communications, 342 outgoing calls and 80 outgoing text messages. Case agents have not observed any contacts between MCDADE's telephone number **414-460-9608 (Target Telephone 1)** and STAIR's telephone number **414-732-3682** (**Target Cell Phone 3**); however, case agents are aware that MCDADE is using DTO member to contact STAIR's telephone number **414-732-3682** (**Target Cell Phone 3**) while he remains in custody and/or "Jeanett" to speak with STAIR.

**U. Service Provider and Prior Court Order**

174. On May 19, 2025, case agents obtained an order authorizing the installation and use of pen register for 414-514-3794 and 414-439-7468 from Honorable Magistrate Judge Nancy Joseph for both Dish Wireless and AT&T service providers. Case agents served the orders on May 21, 2025 and was informed on May 23, 2025 by Dish Wireless that it is the service provider for 414-514-3794 and 414-439-7468; however it subcontracts services with AT&T, and other networks given its technology limitations. AT&T has been providing case agents information as to the court authorized pen register and trap and trace for 414-514-3794 and 414-439-7468.

175. On June 5, 2025, Honorable Magistrate Judge William E. Duffin authorized court electronic surveillance for 414-514-3794 and 414-439-7468 which case agents served on the service provider.

176. On July 3, 2025, Honorable Magistrate Judge William E. Duffin authorized an

extension for court electronic surveillance for 414-514-3794 and 414-439-7468 which case agents served on the service provider. Information obtained from the Service Provider is consistent with MCDADE engaged in ongoing drug trafficking. This expired in August 2025.

177. On August 19, 2025, Honorable Magistrate Judge Stephen C. Dries authorized court electronic surveillance for MCDADE's prior telephone numbers 414-514-3794 and 414-439-7468 and STAIR's telephone number **414-732-3682 (Target Cell Phone 3)** which case agents served on the Service Providers. During the investigation, case agents determined MCDADE changed his telephone numbers to 414-460-9608 with IMEI: 356830361124670 and 414-243-1392 with IMEI: 352700320439870 with DISH network. STAIR's telephone number 414-732-3682 (Target Cell Phone 3).

178. On October 1, 2025 Honorable Magistrate Judge Stephen C. Dries authorized court electronic surveillance for MCDADE's telephone numbers 414-460-9608 with IMEI: 356830361124670 and 414-243-1392 with IMEI: 352700320439870 with DISH network. STAIR's telephone number **414-732-3682 (Target Cell Phone 3),** which were served on their service provides.

**V. Surveillance of STAIR's Tesla**

179. Case agents believe that STAIR is using the **Tesla** to assist with drug trafficking and traveling to locations associated to the DTO and DTO members. Case agents are still attempting to identify other locations used by the DTO, other members of the DTO, the source of supply for narcotics and believe that the court order would be beneficial for the investigation.

180. Case agents have conducted physical and electronic surveillance of STAIR and

have reasons to believe he is operating the **Telsa,** which case agents have observed parked in at in the drive and in the garage of his residence located at 11512 West Woodside Drive, Hales Corners, Wisconsin 53130 and in the parking lot at his business located at 2925 West Lincoln Avenue, Milwaukee, Wisconsin.

181. I believe that tracking the location of the **Telsa** will assist in identifying DTO stash locations and aid in identifying the DTO's source of supply and STAIR's co-conspirators. Based on the above, I believe that STAIR is using the **Telsa** in connection with Title 21, United States Code, Sections 841(a)(1), 843(b), 846, and 853.

182. In order to track the movement of the **Telsa** effectively and to decrease the chance of detection, I seek to place a tracking device in or on the **Telsa** while it is in the Eastern District of Wisconsin, which was last observed in the Eastern District of Wisconsin by case agents on October 27, 2025.

183. STAIR parks the **Telsa** at his residence located in the driveway or his garage at 11512 West Woodside Drive, Hales Corners, Wisconsin 53130. STAIR also parks in the parking lot at his place of business at 2925 West Lincoln Avenue, Milwaukee, Wisconsin. Case agents believe given the DTO's heighten awareness of law enforcement, concerns regarding being investigated, and awareness of law enforcement techniques in investigating DTOs, also given the highly public view of STAIR's residence and business, I believe that daytime installation of the GPS tracker would be difficult and would risk detection by STAIR, STIAR's neighbors or STAIR's employees and DTO members. Therefore, to ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation and removal of the tracking device for the **Telsa**

during both daytime and nighttime hours.

## AUTHORIZATION REQUEST

184. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 authorizing periodic monitoring of the tracking device during both daytime and nighttime hours for a period of 45 days following installation of the device. The tracking device for the **Telsa** may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

185. It is further requested that in the event that the **Telsa** travels outside the territorial jurisdiction of the court, the order authorize the continued monitoring of the electronic tracking device in any jurisdiction within the United States, pursuant to 18 U.S.C. § 3117.

186. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until April 29, 2026. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the owner or user of the **Telsa** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).